# Town of Portsmouth *vs.* Lucy Snell and als.

Under the provisions of the act authorizing fire-wards to repair or demolish buildings which are decayed, and liable to endanger neighboring buildings by taking fire, personal notice must be given to all the owners residing within the town, otherwise suit cannot be sustained against either owner for the repairs.

Where the fire-wards entered for the purpose of making such repairs on the building as might secure it from fire, and also such other repairs as should be necessary to make it a comfortable and decent tenement, *held* that the entry was wrongful, and no claim could be sustained for any portion of the expenses incurred.

This was an action of debt. The plaintiffs' declaration alleged that the defendants, on the 28th Nov., 1833, were the owners of a certain dwelling-house in Portsmouth; that said house was in such a state of decay and want of repairs, as, in the opinion of the fire-wards of said town, greatly to endanger the public safety, from its liability to take and communicate fire; that the defendants, as owners, were ordered by said board of fire-wards to repair said house within fifteen days from said 28th of November, and a written notice thereof was given to the defendants, according to the requirements of the statute, entitled, "an act defining the power

and duties of fire-wards in certain cases," passed December 16, 1828, containing a particular account of the repairs or alterations required to be made, to wit., that said house should be boarded, &c. ; that the defendants and each of them neglected for more than thirty days from and after said 28th November, to make said repairs so ordered upon said house, and thereupon the said fire-wards made said repairs upon said house, agreeably to the provisions of the statute aforesaid, and in making said repairs necessarily expended the sum of $530, for labor and materials in and about the same, whereby, &c.

The defendants plead *nil debet.*

On trial it appeared that the house formerly belonged to one Reuben Snell ; that two of the defendants, Sarah Kelly and John Gilman, were heirs of said Reuben, and part owners of said house, and that the other defendant, Lucy Snell, was the widow of said Reuben, and had a right of dower therein. In 1799, a warrant issued from the probate court to five individuals to set off her dower in said Reuben's estate. Three of them made a return, setting off a part of said house. It did not appear that the other two acted, but the return was approved, and confirmed by the judge of probate. Said Lucy resided in said house on said 28th of November, and for a long time previous had been the only person residing in said house who had any interest there. John Snell, a son, was at that time in the alms house.

Prior to 1830, Clement Storer was a part owner of said house, having a conveyance from Lucy Vennard, one of the heirs of said Reuben Snell. Said Storer, by his last will, approved December 15, 1830, devised all his real estate in New-Hampshire to his wife, Dorothy Storer, and appointed Charles W. Cutter executor.

On the 23d of November, 1833, the town of Portsmouth, having previously adopted the act of December 16, 1828, a petition was presented to the board of fire-wards, by several individuals residing near said house, representing the same

as dangerous for want of repairs, and requesting that the same should be repaired or removed, forthwith. Whereupon the board of fire-wards caused an examination to be made, and found the house in a decayed and dangerous situation as regarded fire, and November 28 passed a resolution directing repairs to be made, and ordered notices to be issued to the occupant and owners.

In pursuance of this order, a notice signed by the chairman and secretary of the board, requiring the repairs mentioned in the declaration to be made within fifteen days, was served on said Lucy Snell November 29 ; a like notice, directed to C. W. Cutter, executor of Clement Storer, was served on him the same day, and three other notices, directed to the heirs of Reuben Snell, deceased, were posted at a tavern, a store, and at the brick market, in said Portsmouth. Said Sarah Kelly and John Gilman did not reside within said town.

No repairs having been made on said house, the board of firewards, on the 23d of December, voted to demolish the house ; but on the 15th of March following, the committee appointed for that purpose reported that the house was sound, and that it would be a waste of property to demolish it ; and it was thereupon " voted, that John Locke be a commit-' tee and agent to make repairs on said house, and is author-' ized to make such repairs as shall make it secure from fire, ' and also make such other repairs as shall be found necessary ' to make it a comfortable and decent tenement."

The chairman of the board testified that the reason why other repairs than those necessary to secure from fire, were ordered to be made, was, that it was thought that the only chance for the town to be reïmbursed was from the rent of the house.

It appeared that Mrs. Snell was then 91 years of age, and in a very wretched condition, and she was immediately thereafter provided for at the expense of the town.

On the 10th of April, 1834, said Locke, who was a mem-

ber of the board, purchased the interest of Mrs. Storer in the house, and afterwards proceeded and completed the repairs begun in March previous, and the board audited and allowed the bills therefor, amounting to over $500, but it did not appear that the town had ever paid any part thereof.

It was submitted to the jury to find what amount of the repairs thus made were necessary in order to render the building secure from fire, and they found the amount to be $175.

Whereupon a verdict was taken, by consent, for the plaintiffs for that sum, subject to further consideration upon the foregoing case.

*Hackett*, for the plaintiff.

*Bartlett* and *Emery*, for the defendants.

UPHAM, J. There are many objections to sustaining this action, but it is unnecessary to consider them farther than may be sufficient for settling this case.

It is incumbent upon the plaintiffs to show that the requirements of the statute have been fully complied with, in order to give them any right to interfere with the property of the defendants; and the plaintiffs must pursue their remedy in the manner, and to the extent merely, specified by the statute.

It must appear, by the proper action of the fire-wards, that a case requiring their interference is made out; and after this is done, notice must be given to the owners, or, in certain cases, to the occupant of the building, " containing a particular account of the repairs or alterations required to be made." Where the owner or owners do not reside within the town, notices to them may be posted up in three public places within the town; but where the owner or owners reside within the town, notices must be given to them personally.

In this case a portion of the resident owners within the town were not personally notified; and unless all the owners are legally notified, neither of them are liable. Each owner has a right to require that the compulsory proceedings under the statute should be brought home to the knowledge of all parties in interest. The owners might then act in concert in making the necessary repairs, or in case suit was brought against them, and the amount recovered was paid by any one of the owners, he would have an appropriate remedy against the others, to compel a contribution of their portion of the expenditure.

In this case, all the owners of the building are neither notified or sued. The proceeding is against part of them merely; and it is very questionable, if the notices were legal, whether any one or more of the owners, less than the whole, would be liable to a suit for the whole expense incurred.

In this case, there is not only this difficulty, but those of the owners who are sued have very different interests in the property. Whether the individual owners, when all are notified, would be liable only for their proportion of the repairs, or for the whole expense of repairs; or whether they must be sued jointly, and an entire recovery be had against the whole—are questions of some difficulty, but they need not be determined at this time. There is, beyond these questions, an objection going directly to the merits of this claim, which in the opinion of the court must ever preclude any recovery upon it.

The fire-wards have authority, by the statute under which this suit is brought, to make repairs on any building that has become dangerous by reason of decay; or, where the building is in a ruinous state, and not worth repairing, they can cause it to be demolished. The extent of their authority is merely to make such repairs as shall be sufficient to protect the neighboring buildings from unnecessary exposure to risk of fire, or to ensure the same end by the destruction of buildings not worthy of repair.

To this extent individuals owning buildings are liable for any expenditures which may be made under this act. But the fire-wards have no authority to interfere with the rights or property of others, with the design to carry their expenditures beyond what is necessary for this purpose. The entry of the fire-wards with such an object cannot be protected by any color of right, under the statute, and renders them liable at once as trespassers.

That the entry in this case was of this character, is apparent from the vote of the firewards. The vote authorizes their committee " to make such repairs on the building ' owned by the defendants as shall make it secure from fire, ' and also make such other repairs as shall be necessary to ' make it a comfortable and decent tenement." This is an entire vote. The entry of the fire-wards was for the purpose of carrying the vote into effect; but they manifestly had no power to go on, and make comfortable tenements at other people's expense. And it appears, from the finding of the jury, that two thirds of the expenditure made was for this purpose.

The expense incurred thus far seems to have been borne by the agent appointed by the fire-wards; and he has taken the precaution to become an owner in the tenement. He may thus, to some extent, have been reïmbursed for his labor. It does not appear that the town has paid any thing; and there are no facts in this case which would render the town liable for such expenditures, unless it should deem itself under obligation to make good the acts of its agents, where they designed to exercise a sound discretion within the provisions of the statute, whether authorized or not.

There can be no apportionment of repairs in this instance, on the ground that the entry was in part for a legal, and in part for an illegal purpose—but the whole must be regarded as a trespass.

The verdict, therefore, must be set aside, and a

*New trial granted.*